UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MARCUS PIZARRO, on behalf of himself, individually,
and all other persons similarly situated,

                **COMPLAINT**

         Plaintiff,

       -against-                *Class and Collective Action*

VERITAS PROPERTY MANAGEMENT LLC and
2023 BELMONT AVENUE HOUSING DEVELOPMENT     *Jury Trial Demanded*
FUND CORPORATION d/b/a 2023 BELMONT AVENUE
HDFC, and JAMES MAISTRE,

         Defendants.
------------------------------------------------------------------------X

      Plaintiff, Marcus Pizarro, on behalf of himself, individually, and all other persons similarly situated, by and through his counsel, the Romero Law Group PLLC, complaining of the Defendants, Veritas Property Management LLC, 2023 Belmont Avenue Housing Development Fund Corporation d/b/a 2023 Belmont Avenue HDFC and James Maistre (collectively as "Defendants"), allege as follows:

### NATURE OF THE CLAIM

      1.     Plaintiff brings this action to recover unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law, Articles 6 and 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations ("NYLL"), unpaid minimum wages under the NYLL, unpaid wages for Defendants' failure to pay agreed upon rates of pay under the NYLL, damages for failure to provide accurate wage statements for each pay period under NYLL § 195(3), damages for unjust enrichment and quantum meruit under New York common law, and to recover unpaid prevailing wages and supplemental benefits owed

to Plaintiff as a third-party beneficiary of contracts entered into with one or more public entities, and any other claim(s) that can be inferred from the facts set forth herein.

2.      Plaintiff brings this lawsuit against the Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of himself, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of the Defendants' willful violations of the FLSA.  Plaintiff brings his claims under the NYLL and New York common law on behalf of himself, individually, and on behalf of any FLSA Collective Action Plaintiff, as that term is defined below, who opts-in to this action.

3.      Plaintiff also brings this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of himself, individually, and on behalf of all other persons similarly-situated during the applicable NYLL limitations period who suffered damages as a result of the Defendants' violations of the NYLL and the supporting New York State Department of Labor regulations, and for violations of New York common law.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and under the FLSA, 29 U.S.C. § 201 *et seq.*, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this United States District Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of New York.

## THE PARTIES

6.      At all times relevant, Plaintiff was a resident of the County of Bronx, State of New York.

2

7.      At all times relevant, Plaintiff was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e), and NYLL § 190(2).

8.      At all times relevant, Defendant Veritas Property Management LLC ("Veritas") is and was a foreign limited liability corporation that is and was incorporated in New Jersey and has a principal place of business at 1995 Broadway, Suite 201, New York, New York 10023.

9.      At all times relevant, Defendant Veritas has numerous business locations in New York, including a business location at 2023 Belmont Avenue, Bronx, New York 10457.

10.      At all times relevant, Defendant Veritas was subject to the requirements of the FLSA because, upon information and belief, it had annual gross revenue of at least $500,000, was engaged in interstate commerce and had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, including but not limited to tools, cleaning equipment, cleaning supplies, painting equipment, paint, construction materials, garbage and recycling receptacles, garbage bags, paper, pens, cellular telephones, and other tools, equipment and materials.

11.      At all times relevant, Defendant Veritas was and is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d) and NYLL § 190(3).

12.      At all times relevant, Defendant 2023 Belmont Avenue Housing Development Fund Corporation d/b/a 2023 Belmont Avenue HDFC ("2023 Belmont Avenue HDFC") is and was a domestic housing development fund company with a principal place of business at 2023 Belmont Avenue, Bronx, New York 10457.

13.      At all times relevant, Defendant 2023 Belmont Avenue HDFC was subject to the requirements of the FLSA because, upon information and belief, it had annual gross revenue of at least $500,000, was engaged in interstate commerce and had employees handling, selling, or

otherwise working on goods or materials that have been moved in or produced for commerce, including but not limited to tools, cleaning equipment, cleaning supplies, painting equipment, paint, construction materials, garbage and recycling receptacles, garbage bags, paper, pens, cellular telephones, and other tools, equipment and materials.

14.     At all times relevant, Defendant 2023 Belmont Avenue HDFC was and is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d) and NYLL § 190(3).

15.     At all times relevant, Defendant James Maistre is and/or was the Chief Operating Officer, manager and/or supervisor for Veritas, and, upon information and belief, had authority to make payroll decisions for Veritas and 2023 Belmont Avenue HDFC, had authority to make hiring, firing and other personnel decisions for Veritas and 2023 Belmont Avenue HDFC, issued discipline and/or counseling documents to Plaintiff on behalf of Veritas and 2023 Belmont Avenue HDFC, was active in the day to day management of Veritas and 2023 Belmont Avenue HDFC, including the payment of wages to Plaintiff and their other employees and determining what wages were paid to Plaintiff and their other employees, was responsible for maintaining personnel records for Plaintiff and their other employees for Veritas and 2023 Belmont Avenue HDFC, and is liable to Plaintiff as an "employer" within the meaning of the FLSA and NYLL.

16.     At all relevant times, Defendants Veritas and James Maistre have and continue to operate and manage numerous residential properties in and around New York City and Long Island.

17.     At all times relevant, Defendant Veritas, through its shareholders, officers, managers and staff, including James Maistre, supervised Plaintiff with respect to his employment at Defendants Veritas' and 2023 Belmont Avenue HDFC's shared business location and supervised Veritas' other employees with respect to their employment at Veritas' other business

locations, including overseeing their day-to-day activities, duties, and scheduling, had authority to make payroll decisions regarding their employment, had authority to make hiring, firing and other personnel decisions for Plaintiff and their other employees, was active in the day to day management of Defendants Veritas and 2023 Belmont Avenue HDFC, including the payment of wages to Plaintiff and their other employees and determining what wages were paid to Plaintiff and their other employees, and was responsible for maintaining personnel records for Plaintiff and their other employees for Defendant Veritas and 2023 Belmont Avenue HDFC.

18.     At all times relevant, Defendant 2023 Belmont Avenue HDFC supervised Plaintiff, including overseeing his day-to-day activities, duties, and scheduling, had authority to make payroll decisions regarding his employment, had authority to make hiring, firing and other personnel decisions for Plaintiff, was active in the day to day management of Defendant 2023 Belmont Avenue HDFC, including the payment of wages to Plaintiff and determining what wages were paid to Plaintiff, and was responsible for maintaining personnel records for Plaintiff.

19.     At all times relevant, upon information and belief, Defendants Veritas and 2023 Belmont Avenue HDFC are two corporations that operate jointly as a common enterprise and/or joint employer.

20.     At all relevant times, Defendants Veritas, 2023 Belmont Avenue HDFC, and James Maistre jointly operated an apartment building and jointly employed Plaintiff.

21.     At all relevant times, upon information and belief, within the scope of Defendant 2023 Belmont Avenue HDFC's business, Defendants Veritas and 2023 Belmont Avenue HDFC share interrelated operations, common management, a centralized control of labor relations, and common financial control within their businesses, including with respect to their payroll for Plaintiff.

22.     At all relevant times, Defendants Veritas and 2023 Belmont Avenue HDFC shared common facilities at their mutual place of business at 2023 Belmont Avenue, Bronx, New York 10457.

23.     At all relevant times, upon information and belief, Defendants Veritas, 2023 Belmont Avenue HDFC, and James Maistre jointly supervised Plaintiff's employment, jointly shared authority to make payroll decisions for Plaintiff, jointly shared authority to make hiring, firing and other personnel decisions for Plaintiff, jointly shared authority to discipline and/or counsel Plaintiff regarding his employment, were both active in the day to day management of their shared business location, including the payment of wages to Plaintiff and determining what wages were paid to Plaintiff, and were both responsible for maintaining personnel records for employees.

24.     Additionally, due to these terms of his employment, Plaintiff cannot ascertain which corporation or Defendant he was performing services for at any given time as the services were mutually provided to all Defendants at all times and for the mutual benefit and interest of all Defendants simultaneously.

**FACTS**

25.     Plaintiff commenced his employment with Defendant 2023 Belmont Avenue HDFC as a non-exempt porter and laborer in or about 2012, a position that he held until his termination in or about January 2024.

26.     Defendants Veritas, 2023 Belmont Avenue HDFC and James Maistre jointly employed Plaintiff as a non-exempt porter and laborer beginning from in or about 2013 until his termination in or about January 2024.

27.     Throughout his employment, Plaintiff was responsible for performing various tasks, including but not limited to cleaning, sweeping inside the building, sweeping areas outside the building, mopping, recycling and garbage removal, routine repairs, boiler repairs, emergency repairs, snow removal, painting, weed removal outside the building, permitting entry of contractors for repairs, and other services as needed.

28.     Throughout his employment, Plaintiff performed these services at Defendants' location at 2023 Belmont Avenue, Bronx, New York 10457.

29.     Throughout his employment, Plaintiff regularly worked six or seven days per workweek.

30.     Throughout his employment, Plaintiff regularly worked on Monday through Friday from approximately 8:00 a.m. until 4:00 p.m., or sometimes even later, during his workweeks. Throughout his employment, these hours constituted Plaintiff's regular scheduled hours of work.

31.     Throughout his employment, Plaintiff was required to sweep outside areas near his assigned buildings from in or about 7:30 a.m. until 8:00 a.m. and again from in or about 5:30 p.m. until 6:00 p.m. seven days per week on Monday through Sunday.  As such, throughout his employment, Plaintiff performed approximately seven additional hours of work per workweek performing these tasks.  Throughout his employment, Defendants did not pay Plaintiff at any rate of pay for these hours worked during his workweeks.

32.     Additionally, throughout his employment, Defendants required Plaintiff to collect and take out garbage and recycling during two weekday evenings after his regular shift ended and on Sundays during each workweek, which commonly required Plaintiff to perform two or more additional hours of work outside of his regular work hours on each occasion.  As such, throughout his employment, Plaintiff performed approximately six additional hours of work per workweek

performing these tasks. Throughout his employment, Defendants typically did not pay Plaintiff at any rate of pay for these hours worked or only a portion of these hours worked during his workweeks.

33.     Throughout his employment, Defendants required Plaintiff to respond to and remedy any emergencies encountered by Defendants' residents in his assigned building both during his regular workday and during his hours off work, including after 4:00 p.m. until 8:00 a.m. each weekday and on weekends in his assigned building.

34.     Throughout his employment, Defendants required Plaintiff to respond to and remedy such emergencies encountered by their residents in his assigned buildings during hours outside of his regular workday multiple times per week, often two to three times, or even more often, during each workweek.

35.     Throughout his employment, Plaintiff was commonly required to spend as many as two to three hours, or sometimes even longer, to respond to and remedy any emergencies encountered by Defendants' residents in his assigned building.

36.     Throughout his employment, Defendants required Plaintiff to be on-call at all times, twenty-four hours per day, seven days per week, to respond to residents' requests and emergencies, and perform work as needed.

37.     Throughout his employment, these emergency services frequently required Plaintiff to return to Defendants' premises when he was not onsite to respond to such emergencies.

38.     Throughout his employment, Plaintiff repeatedly reported these instances of performing emergency work to Defendants.

39.     Throughout his employment, Defendants did not pay Plaintiff at any rate of pay for these hours worked performing emergency work outside of his regular work hours during his workweeks.

40.     Throughout his employment, Defendants also required Plaintiff perform snow removal and boiler repairs as needed after his regular shift ended during his workweeks and during weekends, requiring Plaintiff to perform additional hours of work during many of his workweeks outside of his regular work hours.

41.     Accordingly, throughout his employment, Defendants required Plaintiff to work, and Plaintiff did regularly work, well in excess of forty hours during each workweek, and often in excess of fifty hours during each workweek, and sometimes even more hours.

42.     Throughout his employment, Defendants paid Plaintiff an hourly rate of pay for his hours worked, at least for those hours that Defendants paid him wages.

43.     Throughout his employment, Defendants typically failed to pay Plaintiff at any rate of pay for any of his hours worked after his first twenty-seven hours of work, and Plaintiff only occasionally received compensation for a portion of his additional hours worked in excess of his first twenty-seven hours of work.

44.     Throughout his employment, Plaintiff repeatedly discussed his hours worked with Defendants and complained regarding Defendants' failure to compensate him for all of his hours worked.

45.     Despite this, throughout his employment, Plaintiff's complaints were rejected and Defendants continued to pay Plaintiff only for his first twenty-seven hours of work performed during each workweek, regardless of his actual number of hours worked, and continued to typically

refuse to pay him for his additional hours worked in excess of his first twenty-seven hours worked at any rate of pay, in violation of the FLSA, NYLL and New York common law.

46.     Throughout his employment, despite regularly working in excess of forty hours per workweek, Defendants failed to pay Plaintiff at the statutorily required overtime rate of one and one-half times his regular rate of pay or the minimum wage, whichever is greater, for his hours worked in excess of forty hours during each workweek, in violation of the FLSA and NYLL.

47.     Throughout his employment, Defendants regularly paid Plaintiff only for his first twenty-seven hours of work at his regular, straight-time hourly rate of pay and typically failed to pay Plaintiff at any rate of pay for his hours worked after his first twenty-seven hours of work, even though Plaintiff was regularly required to work far more than forty hours during each workweek.  As such, Defendants frequently failed to pay Plaintiff at any rate of pay, including at his at his agreed upon rate of pay, for his hours worked in excess of twenty-seven hours and up to forty hours during many of his workweeks, in violation of the NYLL and New York common law.

48.     Throughout many workweeks during his employment, Defendants paid Plaintiff compensation that, when his total weekly compensation is converted to a regular rate of pay for all of his hours worked by operation of law, was commonly less than the statutorily required minimum wage rate, in violation of the NYLL.

49.     Throughout his employment, Defendants did not afford Plaintiff an uninterrupted meal period of at least thirty minutes on his workdays on Monday through Friday.

50.     Despite this, upon information and belief, Defendants deducted a meal break from Plaintiff's hours worked even though Plaintiff was not afforded that meal break, thereby failing to pay Plaintiff at any rate of pay for these hours worked, including his overtime rate in violation of

the FLSA and NYLL, minimum wage rate in violation of the NYLL, agreed upon regular rate of pay in violation of the NYLL, and in violation of New York common law.

51.     Upon information and belief, Defendant 2023 Belmont Avenue HDFC entered into one or more contracts with governmental entities, including but not limited to the City of New York or one of its agencies or entities, to provide services and/or operate its building.

52.     Upon information and belief, under these contracts, Defendant 2023 Belmont Avenue HDFC agreed as part of those contracts or as a matter of law was required by such contracts to pay its employees, including Plaintiff, the applicable prevailing wage rate and supplemental benefit rate for their work performed under these contracts.

53.     The promise to pay and ensure payment of the applicable prevailing wage rate and supplemental benefit rate was made for the benefit of all workers furnishing labor to perform under these contracts and, as such, the workers furnishing labor under these contracts – including Plaintiff – are the beneficiaries of that promise and the contracts that, upon information and belief, were entered into between Defendant 2023 Belmont Avenue HDFC and one or more public entities.

54.     Upon information and belief, Defendant 2023 Belmont Avenue HDFC paid Plaintiff less than the applicable prevailing wage rate and supplemental benefit rate to which Plaintiff was entitled, in violation of the applicable contracts.

55.     Upon information and belief, Plaintiff is a third-party beneficiary of Defendant 2023 Belmont Avenue HDFC's promise in the applicable contracts that all employees would be paid the applicable prevailing wage rate and supplemental benefit rate.

56.     Throughout his employment, Defendants did not accurately track or record the hours worked or number of hours worked by Plaintiff.

57.     Defendants willfully disregarded and purposefully evaded record keeping requirements of the FLSA and NYLL by failing to track or maintain accurate records of hours worked by Plaintiff, failing to pay him in accordance with his hours worked, and by failing to pay Plaintiff for many of his hours worked at any rate of pay, in order to intentionally deprive Plaintiff of compensation.

58.     Throughout his employment, Defendants failed to furnish Plaintiff with accurate statements of his wages earned, including, *inter alia*, his correct regular and overtime rates of pay, correct amount of regular and overtime hours worked, and his correct gross wages, net wages, and deductions, for each pay period as required by NYLL § 195(3).

59.     By failing to meticulously record and detail Plaintiff's actual hours worked for each workweek and failing to detail his correct wages as required by NYLL § 195(3), Defendants caused actual and concrete harm to Plaintiff, who was unable to determine whether or how much he had been underpaid for his proper straight-time, regular hourly wages, minimum wages or his overtime compensation throughout his employment.

60.     Because Plaintiff worked without the information required by NYLL § 195(3), Plaintiff was unable to determine the precise amount of wages that he was entitled to receive, assess the manner in which his wages were calculated, and determine that he had been underpaid or how much he had been underpaid for each workweek, which caused Plaintiff to suffer unpaid wages throughout his employment and causing him to suffer underpayments longer than he would have if compliant and accurate wage statements had been provided.

61.     With no way to know how much Plaintiff should have been making, Plaintiff worked throughout his employment without discovering how much he had been underpaid nearly

every week, which denied Plaintiff not only the time-value of that money, but also resulted in continued actual underpayments.

62.    Additionally, Defendants Veritas and James Maistre have been involved in multiple prior litigations relating to similar issues as those asserted herein, one of which was filed at least as early as 2015.  Specifically, these prior matters have asserted several wage and hour claims on behalf of employees of Defendants Veritas and James Maistre that were similarly situated to Plaintiff, the FLSA Collective Action Plaintiffs and the Class Members, including, *inter alia*, claims for failure to pay lawful overtime compensation under the FLSA and NYLL, failure to pay minimum wages under the FLSA and NYLL, and for violations of NYLL § 195(3).  Thus, Defendants Veritas' and James Maistre's violations of the applicable wage and hour laws were willful, intentional and did not occur as part of a good faith effort to comply with the applicable wage and hour laws.

63.    Defendants treated and paid Plaintiff, the FLSA Collective Action Plaintiffs and the Class Members in the same or similar manner pursuant to Defendants' corporate-wide payroll and employment practices.

64.    Plaintiff, the FLSA Collective Action Plaintiffs and the Class Members suffered the same or similar harms as a result of Defendants' corporate-wide payroll and employment practices.

## COLLECTIVE ACTION ALLEGATIONS

65.    At all times relevant, Plaintiff and other FLSA Collective Action Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to the Defendants' decisions, policies, plans and common policies,

programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them proper overtime compensation for hours worked in excess of forty (40) hours each week.

66.    Upon information and belief, there are many current and former employees who are similarly situated to the Plaintiff, who have been underpaid and harmed by such underpayments in violation of the FLSA.  The named Plaintiff is representative of those other workers and is acting on behalf of the Defendants' current and former employees' interests as well as his own interest in bringing this action.

67.    Plaintiff seeks to proceed as a collective action with regard to the First Claim for Relief, pursuant to 29 U.S.C. § 216(b), on behalf of himself and the following similarly situated employees:

> All non-exempt persons who are currently or have been employed by any of the Defendants Veritas Property Management LLC, 2023 Belmont Avenue HDFC and/or James Maistre as an hourly paid superintendent, porter, cleaner, painter, laborer and/or manual laborer and/or in any other similarly-situated position, at any time during the three (3) years prior to the filing of their respective consent forms ("FLSA Collective Action Plaintiffs").

68.    The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).  The FLSA Collective Action Plaintiffs are readily ascertainable.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants.  These similarly situated employees should be notified of and allowed to opt-into this action pursuant to 29 U.S.C. § 216(b).  Unless the Court promptly issues such a notice, persons similarly situated to the Plaintiff, who have been unlawfully deprived of overtime pay in violation of the FLSA, will be unable to secure compensation to which they are entitled and which has been unlawfully withheld from them by the Defendants.

## CLASS ACTION ALLEGATIONS

69.     Plaintiff brings his Second through Seventh claims on behalf of himself, individually, and a class of persons under Fed. R. Civ. P. 23 consisting of all persons who are currently, or have been, employed by any of the Defendants Veritas Property Management LLC, 2023 Belmont Avenue HDFC and/or James Maistre as an hourly paid superintendent, porter, cleaner, painter and/or manual laborer and/or in any other similarly-situated position at any time during the six (6) years prior to the filing of this Complaint (hereinafter referred to as the "Class" or the "Class Members").

70.     The Class Members are readily ascertainable.  The number and identity of the Class Members are determinable from the records of the Defendants.  The hours assigned and worked, the positions held, and rates of pay for each Class Member may also be determinable from the Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants.  Notice can be provided by means permissible under Fed. R. Civ. P. 23.

71.     The proposed Class is numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) individuals who are currently, or have been, employed by the Defendants as a superintendent, porter, cleaner, painter, laborer and/or manual laborer and/or in any other similarly-situated position at any time during the six (6) years prior to the filing of this Complaint.

72.     The Defendants have acted and/or have refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

73.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a)     Whether Defendants failed and/or refused to pay the Plaintiff and Class Members premium overtime compensation for hours worked in excess of forty hours in a single workweek;

(b)     Whether Defendants failed and/or refused to pay the Plaintiff and Class Members at their straight-time, regular hourly rates of pay for all hours worked during their first forty hours of work during each workweek;

(c)     Whether Defendants failed and/or refused to pay the Plaintiff and Class Members at their agreed upon rates of pay for all hours worked during each workweek;

(d)     Whether Defendants failed and/or refused to pay the Plaintiff and Class Members at their applicable minimum wage rates during each workweek;

(e)     Whether Defendants violated New York common law for claims of unjust enrichment and quantum meruit by failing and/or refusing to pay the Plaintiff and Class Members for any of their hours worked during each workweek;

(f)     Whether Defendants failed to furnish the Plaintiff and Class Members with accurate wage statements for each pay period;

(g)     Whether Defendants' general practice of failing and/or refusing to pay Plaintiff and Class Members overtime pay, minimum wage rates, wages at their straight-time, regular rates of pay, wages at their agreed upon rates of pay, and/or any other wages was done willfully and/or with reckless disregard of the state wage and hour laws;

(h)     Whether Defendants took any active steps to ascertain and comply with the state wage and hour laws regarding their payment of wages to Plaintiff and Class Members;

(i)     Whether Defendants failed to keep and maintain true and accurate payroll records for all hours worked by Plaintiff and Class Members;

(j)    Whether Defendants' policies, practices, programs, procedures, protocols, and plans regarding keeping and maintaining payroll records complied with the law; and

(k)    What was the nature and extent of the Class-wide injury and the appropriate measure of damages for the class.

74.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions.  All of the Class Members were subject to the same corporate practices of the Defendants and suffered the same or similar harms as a result of those practices. The Defendants' corporate-wide policies and practices affected all Class Members similarly, and the Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.  Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

75.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.

76.    Plaintiff has retained counsel competent and experienced in class actions, wage and hour litigation, and employment litigation.

77.    A class action is superior to other available methods for the fair and efficient adjudication of litigation, particularly in the context of wage and hour litigation like the present action, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants.

78.    Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  The adjudication of individual litigation claims would result in a great expenditure of Court and public

resources; however, treating the claims as a class action would result in a significant savings of these costs.

79.    The members of the Class have been damaged and are entitled to recovery as a result of the Defendants' common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual Rule 23 Class Members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecutions of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that may result in inconsistent judgments about the Defendants' practices.

80.    Furthermore, current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing those risks.

### FIRST CLAIM FOR RELIEF
### (FAIR LABOR STANDARDS ACT – UNPAID OVERTIME WAGES)

81.    Plaintiff, any FLSA Collective Action Plaintiff who opts into this action, or any others in a similarly-situated position, repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

82.    Defendants employed Plaintiff, any FLSA Collective Action Plaintiff who opts into this action, or any others in a similarly-situated position, for workweeks longer than forty (40) hours and willfully failed to compensate them for all of their hours worked in excess of forty (40) hours per week at a rate of at least one and one-half times the minimum wage or their regular hourly rate, whichever is greater, in violation of the FLSA.

83.    Defendants' violations of the FLSA have been willful and intentional.

84.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

85.     Due to Defendants' violations of the FLSA, Plaintiff, any FLSA Collective Action Plaintiff who opts into this action, or any others in a similarly-situated position, are entitled to recover overtime compensation in amounts to be determined at trial, liquidated damages, attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**(NEW YORK LABOR LAW – UNPAID OVERTIME WAGES)**

86.     Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

87.     Defendants employed Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, for workweeks longer than forty (40) hours and failed to compensate the Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, for hours worked in excess of forty (40) hours per week, at a rate of at least one and one-half times the minimum wage or their regular hourly rate, whichever is greater, in violation of NYLL.

88.     By Defendants' failure to pay Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, overtime wages for hours worked in excess of 40 hours per workweek, Defendants violated the NYLL, Article 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

89.     Defendants' violations of the NYLL have been willful and intentional.

90.     Due to Defendants' violations of the NYLL, Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, are entitled to recover from Defendants

unpaid overtime wages, liquidated damages, attorneys' fees, costs of this action, and interest as permitted by law.

## THIRD CLAIM FOR RELIEF
## (NEW YORK LABOR LAW -- FAILURE TO PAY MINIMUM WAGE)

91.    Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

92.    Defendants employed Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, and willfully failed to pay Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, the applicable minimum wage rates for hours worked during certain workweeks, in violation of the NYLL and the supporting New York State Department of Labor Regulations.

93.    Defendants' violations of the NYLL have been willful and intentional.

94.    Due to Defendants' violations of the NYLL, Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, are entitled to recover from Defendants unpaid minimum wage compensation, liquidated damages, attorneys' fees, costs of this action, and interest as permitted by law.

## FOURTH CLAIM FOR RELIEF
## (NEW YORK LABOR LAW – FAILURE TO PAY WAGES EARNED)

95.    Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

96.    NYLL §§ 190, 191, 198 and 663(1) require that employers pay wages to their employees in accordance with their agreed terms of employment.

97.     Defendants failed to compensate Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, at their regular rates of pay for certain hours that they worked in accordance with their agreed terms of employment.

98.     Defendants' violations of the NYLL have been willful and intentional.

99.     Due to Defendants' violations of the NYLL, Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, are entitled to recover their unpaid wages for all hours worked for Defendants but for which those Defendants did not provide compensation at their regular rates of pay.

100.     Due to Defendants' violations of the NYLL, Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, are also entitled to liquidated damages, attorneys' fees, costs, and interest for Defendants' failure to pay wages in accordance with their agreed terms of employment.

**FIFTH CLAIM FOR RELIEF**
**(QUANTUM MERUIT)**

101.     Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

102.     Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, performed valuable services for Defendants in good faith, at Defendants' behest, which were accepted by Defendants.

103.     Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, performed valuable services for Defendants with the expectation that they would be compensated for their work.

104.    Defendants failed to compensate Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, at their regular rate of pay or any rate of pay for certain hours that they worked for the Defendants.

105.    Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, are entitled to the recovery of the reasonable value of the services that they provided to Defendants, Defendants were enriched at the expense of the Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, and it is against equity and good conscience to permit Defendants to retain what is sought to be recovered.

106.    As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, have sustained and are entitled to recover damages, costs of this action, and interest as permitted by law.

## SIXTH CLAIM FOR RELIEF
## (UNJUST ENRICHMENT)

107.    Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

108.    Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, performed work for the benefit of Defendants, at Defendants' behest.  However, Defendants failed to compensate Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, at their regular rate of pay or any rate of pay for certain hours that they worked for Defendants.

109.    By doing so, Defendants retained monies that they were required to pay to Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, who performed work for Defendants' benefit without receiving any compensation for certain hours worked.

110.    Due to Defendants' conduct in violation of New York common law, Defendants were enriched at the expense of Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, and it is against equity and good conscience to permit Defendants to retain what is sought to be recovered.

111.    As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, have sustained and are entitled to recover damages, costs of this action, and interest as permitted by law.

### SEVENTH CLAIM FOR RELIEF
### (VIOLATION OF NEW YORK LABOR LAW § 195(3))

112.    Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

113.    Defendants failed to provide Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, with accurate statements of their wages earned, including, *inter alia*, their correct regular and overtime rates of pay, correct number of regular and overtime hours worked, or correct gross wages, net pay, or deductions, for each pay period as required by NYLL § 195(3).

114.    Due to Defendants' failure to provide Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, with accurate wage statements as required by

NYLL § 195(3), Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action, are entitled to statutory damages, attorneys' fees and costs of this action.

**EIGHTH CLAIM FOR RELIEF**
**(BREACH OF CONRACT AS THIRD-PARTY BENEFICIARY)**
**(AGAINST DEFENDANT 2023 BELMONT AVENUE HDFC ONLY)**
**(ON BEHALF OF PLAINTIFF ONLY)**

115.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

116.    Upon information and belief, Defendant 2023 Belmont Avenue HDFC entered into contracts with one or more third parties to provide services on public work contracts for which Plaintiff provided labor.

117.    Upon information and belief, Defendant 2023 Belmont Avenue HDFC agreed as part of such contracts and/or as a matter of law were required by such contracts to pay its employees, including Plaintiff, the applicable prevailing wage rate and supplemental benefit rate.

118.    Upon information and belief, Plaintiff was a third-party beneficiary of the contracts entered into by Defendant 2023 Belmont Avenue HDFC.

119.    Upon information and belief, Defendant 2023 Belmont Avenue HDFC breached their public works contract(s) in that it failed to pay Plaintiff the applicable prevailing wage rate and supplemental benefit rate for all labor performed on under any public works contract(s) and that Plaintiff did not receive the monies he was due as a third-party beneficiary of the contracts.

120.    Upon information and belief, Defendant 2023 Belmont Avenue HDFC is liable to Plaintiff for damages based upon an accounting of the wages that Plaintiff was paid and the prevailing wage rate and supplemental benefit rate that he was entitled to be paid as a third-party beneficiary of such contract(s).

121. As a direct and proximate result of Defendant 2023 Belmont Avenue HDFC's unlawful conduct, upon information and belief and as set forth herein, Plaintiff is also entitled to recover costs of this action and interest as permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts into this action pray for the following relief:

    i.    An order restraining Defendants from any retaliation against Plaintiff, Class Members, and FLSA Collective Action Plaintiffs for participation in any form in this litigation;

    ii.    Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under FLSA, and its supporting regulations, and the NYLL, Article 19, § 650 *et seq.*, and the supporting New York State Department of Labor regulations, and New York common law;

    iii.    Designation of this action as an FLSA collective action on behalf of the Plaintiff and FLSA Collective Action Plaintiffs, and any others in a similarly-situated position, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collective Action Plaintiffs, and any others in a similarly-situated position, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

    iv.    Certifying this action a class action pursuant to Fed. R. Civ. P. 23;

v.      Unpaid wages, including overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.* and the supporting United States Department of Labor regulations;

vi.     Unpaid wages, including but not limited to unpaid overtime wages, minimum wages, wages due at their agreed upon rates of pay, and any other form of wages owed, and an additional and equal amount as liquidated damages, pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

vii.    Damages pursuant to NYLL §§ 195(1), 198;

viii.   Damages for unjust enrichment and quantum meruit under New York common law;

ix.     With respect to Plaintiff only, damages against Defendant 2023 Belmont Avenue HDFC for breach of contract as a third-party beneficiary under New York common law;

x.      Pre- and post-judgment interest as permitted by law;

xi.     All attorneys' fees incurred in prosecuting these claims;

xii.    All costs incurred in prosecuting these claims; and

xiii.   Such other and further relief as this Court deems just and proper.

Dated: Hauppauge, New York
      December 31, 2024

ROMERO LAW GROUP PLLC
*Attorneys for Plaintiff*
490 Wheeler Road, Suite 277
Hauppauge, New York 11788
Tel.: (631) 257-5588

By: _____
DAVID D. BARNHORN, ESQ.