

Peter A. Romero, Esq.
David D. Barnhorn, Esq.

Matthew J. Farnworth, Esq.

January 9, 2026

**Via ECF**
Hon. Ronnie Abrams
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Marcus Pizzaro v. Veritas Property Management LLC, et al.*
              Docket No. 24-cv-10050-RA-VF

Dear Judge Figueredo:

      This firm represents Plaintiff Marcus Pizarro in this matter against Defendants Veritas Property Management LLC, 2023 Belmont Avenue Housing Development Fund Corporation d/b/a 2023 Belmont Avenue HDFC and James Maistre (collectively as "Defendants"). Plaintiff brings claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), unpaid minimum wages under the NYLL, unpaid wages for Defendants' failure to pay agreed upon rates of pay under the NYLL, damages for failure to provide accurate wage statements for each pay period under NYLL § 195(3), damages for unjust enrichment and quantum meruit under New York common law, and for unpaid prevailing wages and supplemental benefits owed to Plaintiff as a third-party beneficiary of contracts entered into with one or more public entities. D.E. 1. The parties have reached a resolution of this action. Accordingly, Plaintiff now submits this motion for approval, pursuant to <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the parties' settlement agreement with respect to Plaintiff's FLSA claims only.[1] The parties' proposed settlement agreement, entitled as the "Settlement Agreement and Release" (the "Agreement"), is attached as Exhibit A.

## Procedural History

      On December 31, 2024, Plaintiff filed his Complaint. D.E. 1. On April 30, 2025, Defendants filed their Answer to the Complaint. D.E. 11. Pursuant to this Court's mediation referral order, D.E. 9, the parties then exchanged discovery, including discovery

---

[1] Plaintiff does not seek the Court's approval with respect to the settlement of Plaintiff's non-FLSA claims as there is no requirement for the Court to do so. However, although non-FLSA claims do not require the Court's approval, the parties' settlement agreement, attached as Exhibit A, includes the resolution of Plaintiff's NYLL claims asserted in this lawsuit.

targeted towards their desire to explore an early resolution of this litigation, including relevant documents and information pertaining to the Plaintiff's employment, hours worked and wages earned. After engaging in that discovery, the parties engaged in mediation on July 23, 2025 through the Southern District of New York's court-annexed mediation program. With the assistance of mediator Epifanio Castillo Jr., Esq., the parties negotiated a settlement in principle resolving their disputes. Thereafter, the parties negotiated the terms of their formal settlement agreement.

The settlement agreement between the Plaintiff and the Defendants provides for payment of a gross sum of $80,000.00, inclusive of attorneys' fees and costs. Pursuant to the Agreement, Plaintiff will receive a total of $52,812.00, and Plaintiff's counsel will receive a total sum of $27,188.00, consisting of $26,406.00 for attorneys' fees (i.e. 1/3 of the net settlement amount after deducting costs from the gross settlement amount) and $782.00 for litigation costs. Additionally, Defendants are agreeing to release Plaintiff's arrears, as of July 23, 2025, for monthly fees due relating to his residence in Defendant 2023 Belmont Avenue HDFC's building in the amount of $19,161.00, which could otherwise result in a counterclaim by Defendants against Plaintiff. As a result, Plaintiff is receiving the benefit of nearly $100,000.00 between the cash settlement and the released debts. For the avoidance of doubt, this agreement relates strictly to the amounts due and owing at the time the parties reached a settlement in principle and does not impact or waive the right to recovery with respect to subsequent amounts accrued by Plaintiff.

## **The Court Should Approve the Settlement Agreement as Fair and Reasonable**

FLSA claims may be dismissed with prejudice under Fed. R. Civ. P. 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-207. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Hernandez v. Merrill Lynch & Co., 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id.

In evaluating a proposed settlement of FLSA claims, courts in this Circuit typically apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The Wolinsky factors require consideration of the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arms'-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Id.

In this case, Plaintiff contends that he commenced his employment with Defendant 2023 Belmont Avenue HDFC as a non-exempt porter and laborer, and later superintendent, in or about 2012, a position that he held until his termination in or about January 2024. Plaintiff asserts that Defendants Veritas, 2023 Belmont Avenue HDFC and James Maistre jointly employed Plaintiff as a non-exempt porter and laborer, and later superintendent, beginning from in or about 2013 until his termination in or about January 2024. Plaintiff

contends that he was responsible for performing various tasks, including but not limited to cleaning, sweeping inside the building, sweeping areas outside the building, mopping, recycling and garbage removal, routine repairs, boiler repairs, emergency repairs, snow removal, painting, weed removal outside the building, permitting entry of contractors for repairs, and other services as needed. Plaintiff contends that he was required to perform many hours of work each week outside of his normal workday, including during early mornings, evenings and weekends. For this work, Plaintiff asserts that Defendants paid him an hourly, regular rate of pay for only a portion of his hours worked, and often paid him for less than forty hours during his workweeks, and typically failed to pay him at any rate of pay for other hours worked in excess of forty hours during his workweeks. As a result, despite frequently working in excess of forty hours during his workweeks, Plaintiff alleges that Defendants typically failed to pay him at his statutorily-mandated overtime rate of pay of one and one-half times his applicable regular rate of pay or at the mandated minimum wage rate under the FLSA.

Critically, the parties have several key disputes that impact liability and damages. As a threshold issue, Defendants, and in particular Defendants Veritas and James Maistre, deny that they were Plaintiff's employers, which Plaintiff disputes. Additionally, Plaintiff argues that Defendants were joint employers under the FLSA and are jointly and severally liable for any violations that either allegedly committed. The Defendants deny this arrangement, and instead contend that Defendants Veritas and James Maistre were a separate management company for the building. As such, Plaintiff would be required to convince a trier of fact that the Defendants, other than perhaps Defendant 2023 Belmont Avenue HDFC, were his employers or joint employers under the FLSA in order to obtain liability or damages against most of the Defendants under the FLSA. The outcome of these disputes directly impact whether Plaintiff is able to establish liability as Plaintiff must also prove that Defendants were his employers as an element of his claims. If Defendants succeeded in these defenses – that any of the corporate Defendants or the individual Defendant were not Plaintiff's employers, those Defendants would not owe Plaintiff any compensation. If a trier of fact determined by a preponderance of the evidence that any of the corporate Defendants or individual Defendant were not Plaintiff's employers, Plaintiff would not be entitled to receive any recovery whatsoever against those Defendants.

If Plaintiff were successful at establishing that Defendants were his employers, numerous additional disputes arise. Among these disputes, Defendants contest the number of hours worked by Plaintiff each week, asserting that Plaintiff worked far fewer hours each week than alleged and worked far fewer hours than the amount of hours for which he was paid each workweek. The resolution of this dispute substantially impacts the assessment of Plaintiff's alleged damages. Additionally, while only collaterally related to his FLSA claims, Defendants contend that Plaintiff was exempt under the residential janitor exemption of the NYLL as he was allegedly employed as a superintendent, which is an exemption that does not exist under the FLSA. However, this defense, if proven, could impact Plaintiff's recovery under the FLSA. Specifically, assuming this NYLL exemption does not apply, the NYLL provides for a greater minimum wage and ordinarily provides for a greater overtime rate than the FLSA. The FLSA typically would adopt this greater rate of pay for purposes of assessing Plaintiff's FLSA overtime damages if the NYLL claim were successful. As a result, the determination regarding whether Plaintiff is exempt under the NYLL might impact the value of his damages under the FLSA. Moreover, each of

these disputes will turn primarily on the credibility of the parties and the outcome of complex legal arguments, and the resolution of these disputes would have a significant outcome on both liability and the amount of Plaintiff's damages awarded at trial. Additionally, Defendants contend that they acted in good faith and Plaintiff is not entitled to liquidated damages, whereas Plaintiff asserts that liquidated damages should be awarded because Defendants cannot establish that the alleged violations, if proven, were part of good faith efforts to comply with the FLSA. Specifically, Plaintiff anticipates that Defendants would argue, *inter alia*, that Plaintiff is not entitled to liquidated damages on the basis that Defendants relied on the NYLL residential janitor exemption as a good faith basis not to pay overtime compensation. While Plaintiff vehemently disagrees with this argument, it could eliminate Plaintiff's entitlement to liquidated damages under the FLSA if the argument is credited by the trier of fact.

Plaintiff calculated his damages in order to assess his best possible recovery in this litigation. Making all reasonable assumptions in his favor, according to Plaintiff's calculations, Plaintiff's best potential recovery under the FLSA at trial amounts to $50,909.04 for all of his unpaid FLSA wages and $50,909.04 for FLSA liquidated damages. In contrast, Defendants contend that Plaintiff is not owed any damages or, even if liability were proven, that his damages amount to far less than Plaintiff's claimed damages.

Settling at this stage allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in extensive formal written and document discovery, and depositions of Plaintiff, Defendants, and likely several non-party witnesses. This settlement also avoids potential motions for summary judgment and a time consuming and risky trial, which could result in a months' or years' long delay to obtaining a potential recovery for the Plaintiff, even if he is successful, and avoids the potential of facing future appeals. Notably, a trial in this lawsuit is particularly risky because it will likely turn substantially upon the credibility of the parties and determinations on several complex legal disputes. Plaintiff's recollection of his hours worked and any testimony offered by Defendants in an attempt to undermine his claims will necessarily require the trier of fact to assess the credibility of the respective parties and witnesses. Similarly, the determination regarding whether each Defendant constitutes an employer or joint employer under the FLSA will require the trier of fact to resolve the credibility of the witnesses and weigh those results within the complicated legal concepts governing joint employer or employer status. As such, the outcome of this trial is unusually difficult to predict as Plaintiff faces significant challenges to establish liability against Defendants and the amount of his damages claimed. Moreover, while primarily a concern under the NYLL, Plaintiff faces a significant risk at trial that he is exempt under the NYLL, which, as discussed above, might then reduce the valuation of his damages under the FLSA. As a result, all parties face a serious risk of losing at trial. Even if Plaintiff were successful on his FLSA wage claims, but Defendants could prove that they made a good faith effort to comply with the FLSA, Plaintiff would not be entitled to liquidated damages under the FLSA, reducing Plaintiff's available FLSA damages to $50,909.04. If Defendants could establish that the alleged violations were not willful, Plaintiff's FLSA claims would be subject to a two-year statute of limitations, which would further reduce his unpaid FLSA damages to $26,433.54. Moreover, as noted above, in light of Defendants' defenses, there is a risk that Plaintiff could ultimately receive nothing at all. Thus, by settling at this stage, Plaintiff ensures that he will receive a recovery in this matter. Indeed, under the terms of

the settlement, Plaintiff will receive a substantial portion of his alleged unpaid FLSA wages, even after deducting for attorneys' fees.

Crucially, and a central basis relating to the parties' settlement, Defendants assert that they have limited financial resources and cannot afford a larger settlement or judgment. Because of this, Plaintiff faces a significant risk that he could end up collecting little or even no monetary recovery, even if successful at trial.

Thus, by settling at this stage, Plaintiff ensures that he will receive a substantial recovery in this matter. Indeed, under the terms of the parties' settlement, Plaintiff will receive all of his alleged unpaid FLSA wages and a portion of his FLSA liquidated damages – amounting to approximately 51.87% of his total alleged FLSA damages – or, if a two-year statute of limitations applies under the FLSA, then Plaintiff will receive approximately 99.9% of his total alleged FLSA damages. As such, the parties' settlement is reasonable. See Jara Munoz v. R.S. Woodworks Inc., Docket No. 23-cv-02249-LGD (E.D.N.Y. July 17, 2023) (citing Tapia v. Nations Roof East, LLC, 2022 WL 2104245 at *1 (S.D.N.Y. June 10, 2022) ("discussing cases approving settlements ranging from 25% to 7% of total recovery amount"); and Amhaz v. Booking.com, 2019 WL 9122944 at*2 (S.D.N.Y. Oct 29, 2019) ("approving settlement that represented 9.7% of total recovery amount"), report & recommendation adopted, 2020 WL 3498264 (S.D.N.Y. June 29, 2020)); Munoz v. R.S. Woodworks Inc., Docket No. 23-cv-02249-LGD (E.D.N.Y. July 17, 2023) (approving FLSA settlement and finding the "settlement amount is fair and reasonable as the settlement compensates Plaintiff for approximately 50% of the claimed unpaid wages (despite the significant litigation risks suggesting that they might be entitled to substantially less than that amount, as well as Defendants' claimed financial difficulties)"); Mendoza v. A.P.P.I. Management Corp., Docket No. 22-cv-02179 (JMW), at Pg. 5 (E.D.N.Y. July 11, 2023) (D.E. 30) (approving FLSA settlement providing award of 32% of alleged damages).

Accordingly, although there is a possibility that Plaintiff could recover higher damages if the case proceeded to trial, there is also the significant possibility that he could receive far lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Thus, assuming this settlement is approved, Plaintiff will be able to recover the settlement funds more expeditiously, and with more certainty, than a trial judgment.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, Plaintiff's release in the Agreement is limited to the wage-related claims asserted in this litigation. The release does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. See Flood v. Carlson Rests. Inc., 2015 WL 4111668, at *1-2 (S.D.N.Y. July 6, 2015); Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. March 30, 2015) (prohibiting releases that "purport to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues" but notes additional claims may be released in appropriate circumstances); Cheeks, 796 F.3d at 206 (noting judicial approval of settlements is necessary to avoid an "overbroad release" that waives all possible claims and to prevent potential abuse or overreach in settlements). Here, Plaintiff's release is narrowly tailored to release only claims relevant to or asserted in the

instant action. Additionally, Defendants are releasing claims for arrears for monthly fees, as of July 23, 2025, due relating to his residence in Defendant 2023 Belmont Avenue HDFC's building in the amount of $19,161.00, which could otherwise result in a counterclaim by Defendants against Plaintiff. As previously noted, for the avoidance of doubt, this agreement relates strictly to the amounts due and owing at the time the parties reached a settlement in principle and does not impact or waive the right to recovery with respect to subsequent amounts accrued by Plaintiff.

Likewise, the agreement does not contain a confidentiality clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." Flood, 2015 WL 4111668, at *1 (citing Lopez, 96 F. Supp. 3d at 177-181); Cheeks, 796 F.3d at 206 (quoting Lopez, 96 F. Supp. 3d at 177) (noting judicial approval of settlements is necessary to prevent "'highly restrictive confidentiality provisions… in strong tension with the remedial purposes of the FLSA'"); Cortes v. New Creators, Inc., 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) (citing Lopez, 96 F. Supp. 3d at 177-181). Additionally, the parties have not included a non-disparagement clause.

Additionally, the reasonableness of this settlement is also assured by the involvement of a mediator. Here, the parties engaged in mediation, after this Court's referral order to same, through the Southern District of New York's mediation program. The presence of a mediator "provides assurance that the settlement was not the product of collusion." Bilbao v. LCS Enters. Inc., 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); see also Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 618-619 (S.D.N.Y. 2012) (citing In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 159-160 (S.D.N.Y. 2011)) (explaining parties entitled to a presumption of fairness where mediator facilitated arms-length settlement). Here, the parties engaged in contentious negotiations requiring the assistance of a mediator. Accordingly, the settlement achieved clearly reflects an arms-length negotiation absent from fraud or collusion and is a reasonable compromise over the contested issues in this matter.

**The Court Should Approve the Requested Attorneys' Fees and Costs as Reasonable**

In addition to assessing the reasonableness of the settlement award, most courts since Cheeks have found that courts "must also assess the reasonableness of any attorneys' fee award." Velasquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing Wolinsky, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing Wolinsky, 900 F. Supp. 2d at 336). In this case, the portion of the settlement amount attributable to attorneys' fees is $26,406.00, or approximately one-third of the settlement amount.

Notably, while Courts may now award attorneys' fees in amounts greater than one-third of the total settlement sum, plus costs, Fisher v. SD Prot. Inc., 948 F.3d 593 (2d Cir.

2020), Courts have traditionally held that approval of attorneys' fees of one-third of the settlement sum, plus costs, is reasonable and routinely approve such terms in settlement agreements. Tiro v. Public House Investments, LLC, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); Kochilas v. Nat'l Merchant Servs., Inc., 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); McDaniel v. City of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); see also Jara Munoz v. R.S. Woodworks Inc., Docket No. 23-cv-02249-LGD (E.D.N.Y. July 17, 2023) (citing Tepale v. 245 Gourmet Food Inc., 2022 WL 1186574, at *1 (S.D.N.Y. Apr. 21, 2022) ("noting that courts routinely award one third of a settlement fund as a reasonable fee in FLSA cases"); Euceda v. The Hidden Wharf, Inc., Docket No. 19-cv-06564 (CLP), D.E. 38, at *10 (E.D.N.Y. Feb. 28, 2022) ("the requested fees are approximately one-third of the settlement amount, a percentage typically found reasonable in this Circuit"); Oxley v. Excellent Home Care Servs., LLC, 2020 WL 589581, at *3 (E.D.N.Y. Jan. 8, 2020), report and recommendation adopted, 2020 WL 401772 (E.D.N.Y. Jan. 23, 2020) (citing Romero v. Westbury Jeep Chrysler Dodge, Inc., 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016)) (noting "courts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable" in FLSA settlements and awarding plaintiff's counsel a fee of one-third of the net settlement after costs, plus an award of costs); Yong Yuan Wang v. Mandarin Glen Cove, Inc., 2019 WL 5695910, at *2-3 (E.D.N.Y. Sept. 30, 2019) (citing Romero, 2016 WL 1369389, at *2) (same); Meza v. 317 Amsterdam Corp., 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); Cregg v. Firstservice Residential N.Y., Inc., Docket No. 15-cv-3876-LB, D.E. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); Najera v. Royal Bedding Co., LLC, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); Rangel v. 639 Grand St. Meat & Produce Corp., 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery, plus costs). Courts have held that a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. See Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Here, Plaintiff's retainer with this firm provides for a contingency fee structure awarding attorneys' fees in the amount of one-third of any recovery, plus reimbursement of any litigation costs, which mirrors the trend for awarding attorneys' fees in this Circuit. Thus, Plaintiff's counsel's requested fees of one-third of the settlement sum after deducting for litigation costs is certainly reasonable.

Additionally, the reasonableness of the fee for which approval is requested here is further solidified by "[a]pplying the lodestar method as a cross check." Guaman v. Ajna-Bar NYC, 2013 WL 445896, at *1 (S.D.N.Y. Feb. 5, 2013) (citing Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)). In order to calculate the lodestar check, the Firm multiplied the attorney hours spent on the case by each individual's reasonable hourly rate. See Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007).

Here, the Firm, founded by Peter A. Romero, Esq., focuses primarily on the representation of plaintiffs in class and collective wage and hour litigation in state and federal court. In addition, the Firm also represents plaintiffs in a variety of employment matters, including individual discrimination and harassment claims.

With respect to Peter A. Romero, Esq.'s experience, Mr. Romero graduated from St. John's University School of Law in 2003. He was admitted to practice in New York in November 2003, the United States District Court for the Eastern District of New York in August 2004, and the United States District Court for the Southern District of New York in October 2004. Mr. Romero previously worked for a prominent employment law litigation firm as an associate from July 2004 until January 2009 and as a partner from January 2009 until June 2015. Thereafter, beginning in June 2015 through the present, Mr. Romero has operated his own employment law litigation firm, the Romero Law Group PLLC, which was previously known as the Law Office of Peter A. Romero PLLC, as its principal. That firm employs one senior associate, the undersigned, David D. Barnhorn, Esq., another associate, Matt J. Farnworth, Esq., a paralegal and two administrative assistants, as well as other support staff as needed. Throughout his legal career, beginning in July 2004 through the present, Mr. Romero has focused his practice almost entirely on employment law litigation, where a majority of his cases have been comprised of individual, collective action and class action wage and hour lawsuits in federal and New York courts. Indeed, Mr. Romero has been appointed as Class Counsel in numerous class action cases in federal and New York courts. Moreover, throughout his career, Mr. Romero has conducted numerous trials and arbitrations on behalf of his clients in employment law disputes, including wage and hour matters. Finally, while employed as a partner at another firm from January 2009 until June 2015, Mr. Romero was responsible not only for his own case load of employment law litigation matters, but also for supervising and revising and approving the work of four associates who each had their own case load of employment law litigation matters, including wage and hour matters.

Mr. Romero is also an active member of the National Employment Lawyers Association, an entity that focuses on employee rights in the workplace and whose membership consists of lawyers that primarily, or exclusively, represent employees. Mr. Romero has been recognized by <u>The Best Lawyers in America</u> for his high caliber of work in the practice area of employment law each year since 2013, and by <u>Super Lawyers</u> in 2019, 2020, 2021, 2022, 2023, 2024 and 2025.

The undersigned, David D. Barnhorn, Esq., graduated *cum laude* from Hofstra University Maurice A. Deane School of Law in 2012. I was admitted to practice in New Jersey and the United States District Court for the District of New Jersey in November 2012, in New York State in 2013, and the United States District Courts for the Eastern and Southern Districts of New York in 2014. I have been employed as a senior associate for this firm since April 2018. Prior to joining this firm, I worked as an associate at two prominent employment law litigation firms from November 2012 until April 2018. Throughout my legal career, beginning in November 2012 through the present, I have focused my practice almost entirely on employment law litigation, where a majority of my cases have been comprised of individual, collective action and class action wage and hour lawsuits in New York and New Jersey state and federal courts. Additionally, the undersigned has been appointed as Class Counsel in numerous class action cases in federal

and New York courts. Throughout my time as an associate, I have been responsible for actively handling cases in pre-litigation stages, arbitration, administrative agencies and in litigation in state and federal courts from their inception through trial, appeal and resolution. Moreover, during my career, I have conducted numerous trials and arbitrations on behalf of my clients in employment law disputes, including wage and hour matters.

I am also an active member of the National Employment Lawyers Association, an entity that focuses on employee rights in the workplace and whose membership consists of lawyers that primarily, or exclusively, represent employees. Finally, I have been selected as a Rising Star by Super Lawyers as an "Employment & Labor Attorney" for the years 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, 2024, and 2025.

Here, if Plaintiff's counsel were seeking fees pursuant to the lodestar, Plaintiff would seek hourly rates of $450.00 per hour for Peter A. Romero, Esq., $350.00 per hour for the undersigned, David D. Barnhorn, Esq., and $100.00 per hour for the firm's paralegal, Angelica Villalba. "A reasonable hourly rate is 'the rate a paying client would be willing to pay,' 'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'" Spain v. Kinder Stuff 2010 LLC, 2015 WL 5772190, at *8 (E.D.N.Y. Sept. 29, 2015) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008)). "The reasonable hourly rates should be based on rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Id. (quoting Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotation marks omitted)).

Based on the customary rates charged in this district and the experience of the attorneys responsible for this matter, hourly rates of $450.00 per hour for Mr. Romero, $350.00 per hour for the undersigned, and $100.00 per hour for the firm's paralegal, Ms. Villalba, are reasonable.[2] Bell v. Equinox Holdings, Inc., 25-cv-01644-KMK, at Pg. 10- (S.D.N.Y. July 29, 2025) (D.E. 20) (approving FLSA settlement and finding hourly rate of $450.00 for Peter A. Romero, Esq. and $350.00 per hour for David D. Barnhorn, Esq. are reasonable); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 514-515 (S.D.N.Y. 2011); Harry v. Parkview Operating Co., LLC, Docket No.: 24-cv-00292 (PMH) (S.D.N.Y. Oct. 20, 2024) (approving individual plaintiff wage and hour settlement and finding award of attorneys' fees reasonable pursuant to lodestar crosscheck based on an hourly rate for Mr. Romero of $450.00); Asare v. Change Grp. of New York, Inc., 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) (citing In re Nissan Radiator/Transmission Cooler Litig., 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ("finding reasonable attorneys' fees based on

---

[2] Judge Block cogently found that "Times have changed. '[A]ttorney's fees, like other goods and services, increase in cost with inflation.' Rubin v. HSBC Bank USA, NA, 763 F. Supp. 3d 233, 238-244 (E.D.N.Y. 2025) (quoting Almond v. PJ Far Rockaway, Inc., 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018)) (also discussing that "…courts have been regurgitating these rates for many years without updating them for inflation and market conditions" while noting that rates "have been the same for at least the past thirteen years" in the Eastern District of New York). "Retaining the same rates as far back as at least 2012 is no longer sustainable. Moreover, it runs counter to the admonition of the Supreme Court that the lodestar should be 'current rather than historic hourly rates.'" Id. (quoting Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998); and Missouri v. Jenkins, 491 U.S. 274, 284 (1989)); and citing LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 764 (2d Cir. 1998) ("instructing district court on remand in seven-year litigation to apply 'current rates, rather than historical rates'")).

hourly rates ranging from $750 (partner) to $650 (associate)"); and In re Telik, Inc. Sec. Litig., 576 F.Supp.2d 570, 589 (S.D.N.Y. 2008) ("finding reasonable hourly rates ranging from $700 to $750 per hour")) (approving the following rates as reasonable in wage and hour class action settlement: "$750 per hour for partner time; $500 per hour for senior associate time; $300 per hour for associate time and $150 per hour for paralegal/staff time"); Raniere v. Citigroup Inc., 310 F.R.D. 211, 221 (S.D.N.Y. 2015) (approving class settlement based on percentage of fund method and finding hourly rates of $650-950 per hour for partners, $350-600 per hour for associates, and $180 per hour for staff and paralegals as reasonable during lodestar crosscheck analysis); Guailpa v. N.Y. Pro Signs Inc., 2014 WL 2200393, at *9-10 (S.D.N.Y. May 27, 2014) (approving rate of $600 per hour, in wage-and-hour case, for attorney who graduated law school in 1995), rep. and rec. adopted sub nom., Guallpa v. N.Y. Pro Signs Inc., 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014); Scott v. City of New York, 642 F.3d 56, 59 (2d Cir. 2011) (holding that rate of $550 per hour in FLSA case was reasonable); Siegel v. Bloomberg L.P., 2016 WL 1211849, at *5-6 (S.D.N.Y. Mar. 22, 2016) (awarding partners hourly rates of $505 to $550 per hour and associates hourly rates of $275.00 to $350 per hour in FLSA action); Lora v. J.V. Car Wash, Ltd., 2015 WL 7302755, at *4-6 (S.D.N.Y. Nov. 18, 2015) (adopting report and recommendation and finding $500 per hour to be reasonable rate in FLSA case for attorney with 28 years' experience); Gonzalez v. Scalinatella, Inc., 112 F.Supp.3d 5, 28 (S.D.N.Y. 2015) (awarding hourly rate of $450 to partner with significant experience in FLSA actions); Gurung v. Malhotra, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) (awarding hourly rate of $450 to partner with demonstrated experience and skill in employment litigation); Sanchez v. I&A Rest. Corp., 2017 WL 2537814, at *4 (S.D.N.Y. May 22, 2017) (awarding hourly rate of $450 to partner with significant experience in FLSA actions); Soto, 2016 WL 7396687, at *5 (finding $450 per hour a reasonable rate for experienced litigator in FLSA case); HRB Prof'l Res. LLC v. Bello, No. 17-CV-7443 (KMK), 2018 WL 4629124, at *8 (S.D.N.Y. Sept. 27, 2018) (collecting cases) (ruling nearly seven years ago, citing approvingly of cases awarding partners and experienced litigators rates of $400.00 to $600.00 per hour); Pineda v. Frisolino, Inc., 2018 WL 3628898, at *2 (S.D.N.Y. July 30, 2018) (ruling nearly seven years ago, approving rates for senior associate at $400.00 per hour and other associates at $300.00 per hour in FLSA and NYLL litigation); Sara Designs, Inc. v. A Classic Time Watch Co. Inc., 2018 WL 2976009, at *4 (S.D.N.Y. June 13, 2018) (ruling nearly seven years ago, approving rate of $450.00 per hour for partner, $325 for senior associate, and $275 per hour for junior associate); Payne v. Kirkland, 2017 WL 5952707, at *3-4 (S.D.N.Y. Nov. 30, 2017) (noting partners in small firms have been awarded rates of $550 to $650 per hour, and awarding partner with 13 years of specialized experience in civil rights cases a rate at $475.00 per hour); Torres v. Gristede's Operating Corp., 2012 WL 3878144, at *3 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 F. Appx. 1 (2d Cir. 2013) (citing Clover v. Shiva Realty of Mulberry, Inc., 2011 WL 1832581, at *1 (S.D.N.Y. May 13, 2011)) (noting, thirteen years ago, in FLSA and NYLL matter that "[c]onsistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time" and finding that hourly rates of $550 and $500 were reasonable for partners in FLSA case); Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 2010 WL 4159391, at *8 (S.D.N.Y. Sept. 30, 2010) (citing LV v. New York City Dept. of Educ., 700 F. Supp. 2d 510, 518-525 (S.D.N.Y 2010)) (noting, fifteen years ago, in FLSA and NYLL matter that "[t]he rates sought by plaintiffs' counsel ($400 for partners, $350 for litigation counsel, $300 for

associates with three to seven years of experience, and $200 for associates with one to two years of experience) are consistent with (or lower than) the rates used in other cases involving attorney fee awards..."); LV, 700 F. Supp. 2d at 519 (finding "$600 [to be] a reasonable rate" for two senior lawyers and finding a rate of $375 an hour for an attorney with 10 years of experience "consistent with rates recently awarded to comparably experienced lawyers in this district"); see also Nuno Carrera v. DT Hosp. Grp., 2021 WL 6298656, at *12 (S.D.N.Y. Nov. 1, 2021), report and recommendation adopted, 2021 WL 6298654 (S.D.N.Y. Dec. 7, 2021) (more than four years ago, awarding hourly rate of $300.00 for the undersigned, Mr. Barnhorn, in FLSA and NYLL action); Polit v. Glob. Foods Int'l Corp., 2017 WL 1373907, at *8 (S.D.N.Y. Apr. 13, 2017) (awarding $300.00 to associate with *four* years of experience who acted as lead counsel in FLSA case).

Paralegals performing work in FLSA and NYLL matters are routinely awarded hourly rates of $100.00 in this district. Baizan Guerrero v. 79th St. Gourmet & Deli Inc., 2019 WL 4889591, at *12 (E.D.N.Y. Sept. 10, 2019), report and recommendation adopted, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019) (awarding hourly rate for paralegal at $100.00 in FLSA action); Quito v. El Pedragal Rest., Corp., 2017 WL 2303979, at *2 (E.D.N.Y. May 26, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Lopez v. PMMT Inc., 2016 WL 7633264, at *16 (E.D.N.Y. Aug. 25, 2016), report and recommendation adopted, 2017 WL 27943 (E.D.N.Y. Jan. 3, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Gesauldi v. Dan Yant Inc., 6 F. Supp. 3d 264, 274 (E.D.N.Y. 2014) (collecting cases) (awarding hourly rate for paralegal at $100.00 and noting "[v]arious courts in this district have approved this rate for paralegal services."); Apolinar v. Glob. Deli & Grorcery, Inc., 2013 WL 5408122, at *16 (E.D.N.Y. Sept. 25, 2013) (awarding hourly rate for paralegal at $100.00 in FLSA action).

Here, Plaintiffs' counsel investigated the Plaintiff's claims, conducted a detailed inquiry regarding Plaintiff's job duties, his hours worked and compensation received, and Defendant's compensation policies, Defendants' intended counterclaims, created an assessment of Plaintiff's damages, prepared Plaintiff's Complaint, appeared for Court-mandated mediation, engaged in discovery relevant to settlement negotiations, participated in contentious settlement negotiations, and subsequently negotiated the parties' formal settlement agreement. Due to the contingent nature of the case, Plaintiff's counsel undertook these efforts with no ultimate guarantee of compensation and facing substantial risk given that Plaintiff faced challenges to establish his claims, in particular that a significant portion of Plaintiff's damages included hours worked off-the-clock that are inherently difficult to prove. Additionally, much of Plaintiff's damages arise under the period of the NYLL. As a result, Plaintiff would be required to overcome the NYLL's janitorial exemption during these periods of his employment, which may preclude him from obtaining any overtime damages during this period of his employment if Defendants establish this exemption applies. Plaintiff's counsel was zealous in the pursuit of Plaintiff's litigation objectives and secured a favorable result on the Plaintiff's behalf in light of this risk. The settlement funds will be made available to the Plaintiff without the uncertainty and delay of trial, or the risk that a judgment may be unable to be collected after a successful trial.

As a result, the Firm expended a total of 35.1 billable hours on this matter, as evidenced by counsel's contemporaneous billing records, which are annexed hereto as

Exhibit B. Thus, Plaintiff's attorneys' fees in this matter, when calculated pursuant to the lodestar, amount to $11,265.00. Here, although Plaintiff's lodestar is less than the amount of fees requested under the standard contingency fee method, Plaintiff's counsel's requested fees are well within the range approved by courts when applying a moderate lodestar multiplier.

Where, as here, the lodestar is less than the contingency fee requested, after reviewing the lodestar the Court generally also applies a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. See In re Platinum & Palladium Commodities Litig., 2015 WL 4560206 (S.D.N.Y. July 7, 2015). Courts have awarded multipliers up to eight (8) times the lodestar and in some cases they have awarded multipliers that are even higher. See Beckman v. KeyBank, N.A., 293 F.R.D. 467, 481-482 (S.D.N.Y. 2013) (collecting cases); Zeltser v. Merrill Lynch & Co., 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014) (collecting cases); see also Riveras v. Bilboa Rest. Corp., Docket No. 17-cv-04430 (S.D.N.Y. Dec. 14, 2018) (See DE 74) (Memorandum and Order approving a lodestar multiplier of 6.7). Plaintiff's counsel's representation in this matter is subject to a contingency retainer, creating an inherent risk that this firm could receive no compensation for its efforts in this action if the lawsuit were not successful or if Plaintiff were unable to collect a judgment. Given the Defendants' limited financial circumstances and the inherent risk of a default in settlement payments due to the nine-month payment period, the risk of non-payment for this settlement is serious and exceeds the risks associated with a typical settlement. Moreover, Plaintiff's counsel provided quality representation by zealously pursuing Plaintiff's litigation objectives and obtaining a favorable settlement. Here, the multiplier requested is approximately 2.34, which is well within the range granted by courts in this circuit.

While the multiplier represents a greater recovery than Plaintiff's counsel's lodestar, this should not result in penalizing counsel for achieving an early settlement. See Zeltser, 2014 WL 4816134, at *10 (citing Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005)) ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits."); Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) (noting that "the lodestar method does not reward early settlement" and that "counsel should [not] necessarily receive a lesser fee for settling a case quickly"); Beckman, 293 F.R.D. at 482 (noting applying multiplier is proper as achieving an early settlement "should not result in penalizing plaintiffs' counsel"); see also Fisher v. SD Prot. Inc., 948 F.3d 593, 603 (2d Cir. 2020) (quoting Sand v. Greenberg, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)) ("Fee awards in wage and hour cases should 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'"); Zeltser, 2014 WL 4816134, at *8 (quoting Sand, 2010 WL 69359, at *3; and citing Reyes v. Altamarea Grp., LLC, 2011 WL 4599822, at *1 (S.D.N.Y. Aug. 16, 2011)) ("Fee awards in wage and hour cases are meant to 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" and "The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights.").

   Additionally, the Court should review the public policy considerations concerning the manner in which attorneys' fees are assessed.  Since a reasonable value of the case had already been obtained in a settlement, the only purpose of continuing this litigation would have been to build up attorneys' fees.  This would forestall a resolution that could have been achieved earlier.  While the undersigned would never continue with a case to build up fees beyond the point where a reasonable settlement is reached, other attorneys who do wage-and-hour litigation very well might.  Reducing attorneys' fees in single plaintiff FLSA cases below one third would disincentivize early resolution of these cases.  As FLSA cases have become a significant portion of the federal docket, the efficient and early resolution of these cases is in the best interests of public policy.  Thus, the amount of attorneys' fees sought – $26,406.00 – is a reasonable fee in this action.

   Lastly, Plaintiff's counsel seeks reimbursement for $782.00 in advanced litigation costs, representing $405.00 for the filing fee for the Complaint and $377.00 for service of process of the Summons and Complaint.  Copies of the invoice for service of process is annexed as Exhibit C.

   Accordingly, Plaintiff's counsels' request for attorneys' fees in the amount of $26,406.00 and expenses in the amount of $782.00 should be approved as reasonable.

   In light of the foregoing, Plaintiff respectfully requests that the Court enter an order approving the parties' FLSA settlement and dismissing this lawsuit with prejudice, while maintaining jurisdiction to enforce the terms of the settlement.

   We thank the Court for its consideration of these requests.

               Respectfully submitted,

               */s/ David Barnhorn*

               _____
               DAVID D. BARNHORN, ESQ.

C:  All Counsel of Record *via* ECF